**Vicky BRIGGS**

v.

**DALKON SHIELD CLAIMANTS TRUST.**

**Civil Action No. K–85–293.**

United States District Court, D. Maryland.

Aug. 27, 1997.

---

370

H. Robert Erwin, Erwin Law Firm, Baltimore, MD, for Plaintiff.

Paul Strain and Kathleen G. Cox, Venable, Baetjer and Howard, Baltimore, MD, for Defendant.

## MEMORANDUM AND ORDER

GRIMM, United States Magistrate Judge.

This case has been assigned to me for trial with the consent of the parties. 28 U.S.C. § 636(c). The plaintiff has brought this action against the defendant, Dalkon Shield Claimants Trust, seeking damages for injuries allegedly sustained as a result of using the Dalkon Shield Intra Uterine Device ("IUD") manufactured by the A.H. Robins Company.[1] Presently pending before me are the parties' numerous Motions in Limine and oppositions and replies thereto. Paper Nos. 28–51. A hearing on these motions is set for September 15, 1997. This Memorandum and Order will address a preliminary matter which must be resolved before the evidentiary issues raised in the motions in limine can be properly addressed. As to this preliminary matter, no hearing is necessary.[2] Local Rule 105.6 (D.Md.1997).

## BACKGROUND

In her amended Complaint, the plaintiff asserts the following causes of action against the defendant: negligence (including negligent design, development, advertisement, failure to warn and negligent misrepresentation of the safety and efficacy of the IUD), count I; strict liability (asserting that the IUD was manufactured and marketed in an unreasonably dangerous condition), count II; and fraud and misrepresentation (including allegations that the defendant's predecessor in interest misrepresented the safety and effectiveness of the IUD, and deliberately failed to recall it after allegedly discovering that it was dangerous), count III. Amended Complaint, Paper No. 15. The defendant denies these allegations. It also asserts various affirmative defenses, including that the case is time barred under the applicable statute of limitations, assumption of the risk, proper design and manufacture of the IUD and proper discharge of any duty to warn. Answer to Amended Complaint, Paper No. 16.

On July 14, 1997, the defendant filed a paper styled "Waiver of Proof" (hereinafter "Waiver"). Paper No. 27. In it, the defendant asserts that, for the purpose of this litigation only, it "will not require plaintiff to prove any legal theory other than her claim that the Dalkon Shield was the cause of her injuries." Paper No. 27 at 1. According to the defendant, the jury therefore will only need to decide two questions: (1) whether plaintiff has proved that her use of the Dalkon Shield IUD caused the injuries she claims; and, if so, (2) what damages plaintiff has sustained as a result. *Id.* The defendant states that the Waiver should not be interpreted to "stipulate or admit to negligence, product defect, strict liability or any other theory of liability alleged in the Amended Complaint." *Id.* at 1–2. "Rather," the defendant states, "this Waiver of Proof removes the need to prove and instruct the jury on all elements of the plaintiff's causes of action, except medical causation and damages." *Id.* The defendant further advises that its waiver only applies to the pending litigation, and is not to be used by any party or counsel for contending that it precludes or limits the assertion of claims, denials or defenses in other matters on any basis, including estoppel, issue preclusion or judicial admission. *Id.* at 2.

Not surprisingly, the plaintiff objects to the defendant's unilateral Waiver. At issue is whether the Waiver will effectively deprive the plaintiff of the ability to present her claims in their most persuasive light, and whether, if imposed against her, the Waiver will rob the plaintiff of facts that support her claims. For reasons discussed more fully below, I agree with the plaintiff that she cannot be forced to accept the Waiver as an involuntary stipulation which has the automatic effect of removing issues from the litigation and concomitantly limiting the scope of what evidence is relevant under Fed.R.Evid. 401 and admissible under Rule 402. Nevertheless, I find that the fact that the defendant has offered to stipulate that

---

[1]. The A.H. Robins Company is the predecessor in interest of the defendant Dalkon Shield Claimants Trust for purposes of such personal injury claims.

[2]. If either party feels unfairly aggrieved by this Memorandum and Order, they may, of course, file a motion to reconsider as permitted by Local Rule 105.10 (D.Md.1997).

the only triable issues are causation and damages is a factor which I can weigh at trial under Fed.R.Evid. 403 in determining whether proffered evidence which is relevant under Rule 401 should be excluded under Rule 403 because it will cause confusion, mislead the jury, unduly delay the trial, waste time, or result in needless presentation of cumulative evidence.

## DISCUSSION

The question of whether a party may be compelled by an opposing party, or the court, to accept a material stipulation of fact presents an interesting issue, implicating the interplay between the rules of evidence and procedure.[3] With respect to the rules of evidence, the operative rules are Fed.R.Evid. 104(a), 401, 403 and 611(a). With respect to the rules of procedure, Fed.R.Civ.P. 16 is most applicable.

Fed.R.Evid. 401 defines relevant evidence as that which has any tendency to make the existence of any fact "that is of consequence to the determination of the action" more probable or less probable than it would be without the evidence. Fed.R.Evid. 401. Those who wish to impose upon their opponent a stipulation—with the caveat that it thereby precludes proof at trial of certain material facts—commonly argue that if a fact is stipulated to before trial, it is no longer at issue, has been removed from the dispute, and thereby is no longer of any consequence to the determination of the action. The Commentary to Rule 401 suggests that this analysis is incorrect:

> The fact to which the evidence is directed need not be in dispute. While situations will arise which call for the exclusion of evidence offered to prove a point conceded by the opponent, the ruling should be made on the basis of such considerations as waste of time and undue prejudice (see

Rule 403), rather than under any general requirement that evidence is admissible only if directed to matters in dispute.

Rule 403 does, of course, vest great authority in the trial judge to exclude evidence which is relevant under Rule 401, and thereby ordinarily would be admissible under Rule 402, if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. This authority is buttressed by Rule 104(a), which provides that preliminary questions concerning the admissibility of evidence will be determined by the court, and Rule 611(a), which states that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time. . . ." Fed.R.Evid. 611(a).

From the perspective of the Rules of Procedure, Fed.R.Civ.P. 16—governing pretrial scheduling and management of civil cases—authorizes the court, at any conference held pursuant to that rule, to "take appropriate action, with respect to . . . the formulation and simplification of the issues, . . . the possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof, . . . advance rulings from the court on the admissibility of evidence . . . [and] the avoidance of unnecessary proof and of cumulative evidence. . . ." Fed.R.Civ.P. 16. However, the rule does not specifically state that the court may compel a party to stipulate to facts which his or her opponent offers to stipulate to, and, as might be imagined, there is authority for both sides of this proposition.[4]

---

**3.** *See* 21 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5194, at 192–95 (1978) ("One important issue that lies on the border between the law of evidence and the law of procedure concerns the validity and effect of evidentiary stipulations. . . . Although the question of enforcing evidentiary stipulations is one that involves the issue of 'admissibility' of evidence, sound policy would suggest that it

should be treated as a question of procedure that is beyond the scope of the Evidence Rules.").

**4.** As authority for the proposition that a court may not compel an involuntary stipulation under Fed.R.Civ.P. 16 *see, e.g., J.F. Edwards Constr. Co. v. Anderson Safeway Guard Rail Corp.*, 542 F.2d 1318, 1325 (7th Cir.1976) ("To recapitulate, Rule 16 of the Federal Rules of Civil Procedure does not compel a stipulation of facts. . . ."); 6A

■ Although it may well be that the trial court has authority to order one party to accept a stipulation offered by the opposing party,[5] this should not be done without carefully considering the following factors: (1) the importance of the facts in question to the case of the party opposing the stipulation (for example, is the fact of modest relevance, or central to the case); (2) the nature of the stipulation, and whether it is qualified or conditional;[6] (3) the scope of the proposed stipulation (stipulation to a specific fact or item of evidence as opposed to a stipulation to one or more elements of a claim or defense); and (4) the impact of the stipulation, if ordered, on the burden of persuasion borne by the party resisting the stipulation.[7]

With respect to the second factor above, it is often important to know exactly what type of stipulation is being offered. As one noted authority points out:

> Evidentiary stipulations can take a number of forms. The parties or their counsel can agree that certain facts shall be taken as true for the purposes of the litigation. The agreement can take a less conclusive form, as when it is stipulated that a certain witness, if called, would have testified to particular facts. Yet another form of stipulation is to the effect that certain evidence will be admissible, despite a general rule of exclusion, or that certain evidentiary rules will be waived or that otherwise admissible evidence will not be used.

22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5194, at 193 (1978). These stipulations are more properly referred to as "judicial admissions," and are distinct from admissions by a party opponent as provided by Fed.R.Evid. 801(d)(2). *Id.* at 193–94. They should also be distinguished from "procedural admissions," such as admissions contained in pleadings or admissions made pursuant to Fed. R.Civ.P. 36. *Id.* at 194. *See also* John W. Strong, *McCormick on Evidence* § 257, at 146–47 (4th ed.1992).

■ The nature of the "stipulation" or "admission" offered may affect whether or not the opposing party is willing to accept it, and whether or not the court should order

---

Charles A. Wright, et al., *Federal Practice and Procedure* § 1525.1, at 252–53 (2d ed.1990) (observing that there is a serious issue regarding the power of the court, pursuant to Fed.R.Civ.P. 16, to order parties to stipulate). Other courts have reached the opposite conclusion. *See. e.g., Holcomb v. Aetna Life Ins. Co.,* 255 F.2d 577 (10th Cir.1958); *Brinn v. Bull Insular Lines,* 28 F.R.D. 578 (D.Pa.1961); *U.S. v. AT & T,* 83 F.R.D. 323, 332, n. 18 (D.D.C.1979) ("In this vein, Rule 16 contemplates that the Court may compel parties to stipulate as to all matters concerning which there can be no real issue.").

5. Even if there is doubt about whether the court has the authority to directly order that a stipulation be involuntarily accepted pursuant to Fed. R.Civ.P. 16, there can be no real dispute that the court has abundant authority to achieve this same result through Fed.R.Evid. 403, by evaluating whether the probative value of the evidence which is offered by the party resisting the proposed stipulation is outweighed by one of the undesirable consequences addressed by that rule. If the court determines that "live evidence" is merely cumulative in light of the opposing party's stipulation, it may simply rule that it will not be admitted.

6. For example, a stipulation that if a particular witness was called to the stand she would testify that the light was green, as opposed to a stipulation that the light was green.

7. This factor can be most significant. Imagine the difference in the persuasive impact of a stipulation that an automobile accident resulted in the "totaling" of the plaintiff's car and head injuries to the plaintiff as compared with the introduction of color photographs of the wreckage and the plaintiff bleeding from the head. In such a circumstance, as one court recently noted, to substitute a "naked" admission for proof of the facts by testimonial and other evidence "might have the effect of eliminating from the evidence much of its fair and legitimate weight." *Merchant v. Lymon,* 828 F.Supp. 1048, 1065 (S.D.N.Y.1993); *see generally* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 403.04[3], at 403–44, n. 15 (2d ed.1997). As one well known commentator notes, " 'a colorless admission by the opponent may sometimes have the effect of depriving the opponent of the legitimate *moral force of his evidence;* furthermore, a judicial admission may be cleverly made with grudging limitations or evasions or insinuations ... so as to be technically but not practically a waiver of proof.' " 1 Michael H. Graham, *Handbook of Federal Evidence* § 403.1, at 263, n. 33 (4th ed.1996) (*quoting* 9 Wigmore, *Evidence* § 2591, at 589 (3d. ed.1940)) (emphasis in original). The distinction between the admissibility of evidence of a particular fact, and the weight this evidence has in meeting its proponent's burden of persuasion is a well recognized principle of evidence law. *See* Fed.R.Evid. 104(e).

that it be accepted. For example, a stipulation that a particular witness will testify in a certain fashion is not the same as stipulating that the facts contained in that statement are actually true. The former is not conclusive, and the party stipulating may still argue that the witness whose testimony was the subject of the stipulation is not credible. Similarly, an admission under Fed.R.Civ.P. 36 is allowed for the purpose of the pending action only, is not an admission for any other purpose and may not be used against the admitting party in any other fashion. Contrastingly, admissions made in pleadings or by counsel during in court proceedings may be used as evidentiary admissions in other proceedings. John W. Strong, *McCormick on Evidence* § 257, at 148 (4th ed.1992). Thus, a court should be sensitive to the different effect given to various forms of "stipulations" in determining whether or not to preclude admission of evidence to establish the facts which are the subject of the proposed stipulation.

Finally, a number of learned commentators have considered whether it is proper to preclude a party from proving facts to which an opponent is willing to stipulate. *See, e.g.,* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 403.04[3] (2d ed. 1997) ("If the probative value test is met, admission of prejudicial evidence may be proper in some instances even though the party against whom it is offered expressly agreed to stipulate to the proposition for which it is offered, as the stipulation may not provide the jury the same probative force as the evidence itself.");[8] 22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5194, at 198–99 (1978) ("Although there is authority that suggests that the trial judge should compel the prosecution to accept such stipulations, the weight of authority in federal courts seems to hold that the defendant has no right to have his stipulation accepted."); Lynn McClain, *Maryland Evidence, State and Federal* § 401.1, at 263–64 (1987) ("One may, for tactical reasons, wish to make certain allegations, admissions, or stipulations, so as either to open up areas for helpful evidence or to foreclose subject areas as to which one believes live evidence would be more damaging than an admission or a stipulation.... One's making an admission or entering into a stipulation as to the truth of a particular fact, however, will not necessarily preclude one's opponent from offering other evidence of the fact. The court, in its discretion, may allow the admission of other evidence if it has determined that the evidence would provide a significant gain in probative value to the fact finder over the proof of only the stipulation or admission."); and Michael H. Graham, *Handbook of Federal Evidence* § 403.1, at 261–62 (4th ed. 1996) ("In evaluating the incremental probative value of the proffered evidence, the fact that the opponent has offered to stipulate or is not disputing the proposition for which the evidence is being offered should be considered. However, the fact that the proposition is not being disputed is not alone dispositive; the proponent of the evidence is entitled to have the court also consider the fair and legitimate weight introduction of the evidence would have upon the trier of fact.").

■ The position articulated by Professor Graham seems to be the most helpful. No absolute rule should be followed. Instead, applying the four factors identified above, the court should take into consideration the fact that one party is willing to stipulate in determining whether or not to admit other evidence of the facts which are the subject of the proffered stipulation, but should also consider the weight and fair impact the "live" evidence would have on the fact-finder. Professor Wright agrees with this position as well, noting that "Rule 403 would appear to make it proper for the court to consider the defendant's offer to stipulate as one element in the balancing required in exercising its discretion to exclude relevant evidence." 22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5195,

---

**8.** Judge Weinstein is of the mind, however, that "[n]evertheless, it should be the unusual case in which a court refuses to accept an offer to stipulate. Courts generally should be receptive to stipulations that will minimize the prejudicial aspects of evidence. The saving in time and in risk of prejudice may be substantial." 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 403.04[3], at 403–45 (2d ed.1997).

at 199 (1978). With this approach in mind, it is easy to see why the defendant's Waiver should not be involuntarily forced upon the plaintiff in this case.

■ The first factor to analyze is the importance of the facts which are the subject of the proposed stipulation to the case of the party opposing the stipulation. In this regard, the defendant's Waiver seeks to eliminate all proof of the facts underpinning each of the three theories of liability asserted: negligence, strict liability, and misrepresentation, and to confine the proof exclusively to the two issues of causation and damages. Thus, if accepted by the plaintiff, or ordered by the court, the stipulation would virtually preclude the plaintiff from offering any proof of facts to show liability by the defendant. The facts in question are thus of central importance to the litigation.

The second factor is the nature of the stipulation. Interestingly, the defendant goes to great lengths to avoid referring to the Waiver as a stipulation or admission. Indeed, the defendant specifically disclaims any negligence, product defect or misrepresentation. Moreover, the defendant seeks to insure that the Waiver's effect is limited to this case only, by asserting that it cannot be used in the future to support any allegation of issue preclusion, waiver or estoppel. Further, although styled as a "waiver" of the requirement that the plaintiff prove its liability case, the defendant does not concomitantly relinquish its affirmative defenses. Viewed as a whole, the waiver is so limited and narrow that Colonel Wigmore's comment that stipulations may sometimes be nothing more than "cleverly made with grudging limitations or evasions or insinuations ... so as to be technically but not practically a waiver of proof" seems a particularly fitting description of it.[9]

The third factor is the scope of the proposed stipulation. As already noted, the defendant's waiver is not limited to a particular piece of evidence, or the testimony of a particular witness, but instead is aimed at the plaintiff's entire liability case. Accordingly, its scope is far-reaching.

The final factor is the impact of the stipulation, if ordered, on the burden of persuasion borne of the party resisting the stipulation. It is this factor, more than any other, which militates against an order that the Waiver be accepted by the plaintiff in this case. A review of the various motions in limine filed in this action shows just how the defendant hopes to use the Waiver. For example, in its memorandum in support of its motion to exclude evidence of pregnancy rates, the defendant advances as one reason why the evidence which is the subject of the motion should not be admitted the following argument: "In order to narrow the issues to be tried and streamline the trial of this matter, the Trust has waived the requirement that Plaintiff prove any legal theories of her claim other than causation and damages. Therefore, product defect is no longer an issue." Paper No. 32 at 9, n. 4. This identical argument is asserted by the defendant in its efforts to preclude introduction of evidence regarding septic abortions (Paper No. 36 at 2, n. 2), and in its motion to exclude evidence of punitive damages (Paper No. 31 at 10, n. 4).

At the same time the defendant seeks to block the plaintiff from offering any evidence to show that it was negligent in the design, manufacture, sale and marketing of the product, or that it was dangerously defective, or that the defendant engaged in fraudulent or negligent misrepresentations about the product, it proposes to defend the plaintiff's causation claim by arguing that any damages she sustained were as a result of a sexually transmitted disease contracted by intimate relations with numerous partners, instead of by the IUD, as claimed. See Joint Pretrial Statement, Paper No. 52 at 7–11. Thus, if allowed as intended by the defendant, its Waiver would prevent the jury from learning any facts about its alleged liability, while shifting almost the entire focus of the trial to the intimate details of the plaintiff's life. As noted by the court in *Merchant v. Lymon*, 828 F.Supp. 1048, 1065 (S.D.N.Y.1993) permitting the Waiver to block all evidence of the defendant's alleged liability would strip the plaintiff's case of "much of its flair and

9. *See supra* note 6.

legitimate weight." It cannot seriously be disputed that the difference between proceeding with the Waiver, as opposed to allowing the plaintiff to prove her liability case, would deprive the plaintiff of the "moral force" of some of her most important evidence. To do this, while at the same time allowing the case to almost exclusively focus on the most personal details of the plaintiff's background, simply would be unfair.[10] Thus, I will not order that the Waiver, and its attendant limitations on the scope of admissible evidence, be accepted by the plaintiff against her wishes.

■ Nevertheless, having determined that the Waiver will not be imposed involuntarily against the plaintiff, she should not overlook the fact that in determining whether any particular piece of evidence is admissible, one of the factors I will balance pursuant to Fed.R.Evid. 403 is whether the defendant contests the issue toward which the evidence is directed. I will not allow the jury to be sidetracked by introduction of evidence which is cumulative or which will waste time, confuse the issues, or distract from the matters which are truly in dispute.

### CONCLUSION

For the reasons stated above, the plaintiff will not be ordered to involuntarily accept the defendant's Waiver. In ruling on evidentiary objections, however, whether raised before or during trial, I will take into consideration whether or not the defendant disputes the issue toward which the evidence is directed in determining whether the probative value of the proffered evidence is outweighed by the danger of unfair prejudice, delay, confusion of the issues, or the presentation of cumulative evidence.

---

**10.** I have not yet ruled on the various motions in limine, and it would be a mistake for the parties to attempt to divine from this Memorandum how I will rule on them. Argument is set for September 15, 1997, and, as noted, this Memorandum is only meant to assist in the resolution of the disputed evidentiary issues.